UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RICHARD H., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-cv-00547-TAB-JRS |
| | ) |
| FRANK BISIGNANO, | ) |
| Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S REQUEST FOR REMAND**

**I.     Introduction**

Plaintiff Richard H. suffers from postural orthostatic tachycardia syndrome (POTS), which occasionally causes him syncopal (or fainting) spells. This among other impairments led Plaintiff to apply for disability insurance benefits with the Social Security Administration. Here he appeals the denial of that application, arguing the Administrative Law Judge failed to include appropriate limitations for his post-syncope migraines and inadequately assessed a medical opinion from his treating physician. Plaintiff, however, points to no medical evidence demonstrating he required additional limitations beyond those set forth by the ALJ. And the ALJ was not required to analyze the treating physician's statements in the manner Plaintiff suggests given the statements addressed "issues reserved to the Commissioner." 20 C.F.R. § 404.1520b(c)(3). Accordingly, Plaintiff's request for remand [Filing No. 11] is denied.

**II.    Background**

Plaintiff applied for disability insurance benefits with the Social Security Administration on June 21, 2023. After the agency denied his application initially and upon reconsideration,

Plaintiff requested a hearing before an ALJ.  An ALJ held an evidentiary hearing on September 10, 2024, at which Plaintiff and a vocational expert testified.  [Filing No. 7-2, at ECF p. 18.]  Following the hearing, the ALJ concluded Plaintiff was not disabled.  [Filing No. 7-2, at ECF p. 34.]  To reach that conclusion, the ALJ employed the Social Security Administration's "five-step sequential evaluation process" for determining disability status.  20 C.F.R. § 404.1520(a)(1).

At step one, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date of October 19, 2022.  [Filing No. 7-2, at ECF p. 20.]  At step two, the ALJ determined Plaintiff's POTS, obstructive sleep apnea, and obesity were severe impairments—meaning they significantly limited his ability to perform basic work activities.  The ALJ also determined that Plaintiff had the following non-severe impairments: hypertension, osteoarthritis of the left knee, derangement of the meniscus of the right knee, and post-traumatic stress disorder.  [Filing No. 7-2, at ECF p. 21–23.]  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any impairments listed in the SSA's regulations as "conclusively disabling."  *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021).

Proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity, that is, "his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments."  [Filing No. 7-2, at ECF p. 20.]  After considering Plaintiff's subjective symptoms "and the extent to which [those] symptoms [could] be reasonably accepted as consistent with the objective medical evidence and other evidence," the ALJ found Plaintiff had the residual functional capacity:

> [T]o perform medium work as defined in 20 CFR 404.1567(c), except that he can occasionally climb ramps and stairs, frequently balance, with no work around ladders, ropes, or scaffolds, no work at unprotected heights, no work around hazardous moving mechanical parts, and no operation of motor vehicles.

[Filing No. 7-2, at ECF p. 24.]

The ALJ then assessed whether Plaintiff—given his age, education, work experience, and residual functional capacity—could perform his past relevant work as a department manager. Relying on the testimony of a vocational expert, the ALJ determined Plaintiff was capable of performing that past work. [Filing No. 7-2, at ECF p. 33–34.] Accordingly, the ALJ concluded Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for review [Filing No. 7-2, at ECF p. 2] and this appeal followed.

### III. Discussion

Plaintiff argues two errors in the ALJ's decision require reversal and remand to the agency: (1) the ALJ's residual functional capacity assessment failed to account for the "actual limitations associated with [his] POTS episodes"—more specifically, how Plaintiff's post-syncope migraines prevented him from working; and (2) the ALJ failed to treat statements from treating physician Dr. Hannah on several short-term disability insurance forms as "medical opinion" evidence and evaluate their persuasiveness. [Filing No. 11, at ECF p. 4.]

The Court will reverse an ALJ's decision "only if it is the result of an error of law or if it is unsupported by substantial evidence." *Tutwiler v. Kijakazi*, 87 F.4th 853, 857 (7th Cir. 2023). Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (internal quotation marks and citation omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.*

An ALJ must build "an adequate 'logical bridge' connecting the evidence and her conclusions." *Tutwiler*, 87 F.4th at 857 (internal citation omitted). The Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its]

3

judgment for the ALJ's determination so long as substantial evidence supports it." *Gedatus*, 994 F.3d at 900.

      A.      **Residual Functional Capacity**

Plaintiff faults the ALJ's residual functional capacity assessment because it "hardly accounts" for his testimony about the migraines he would experience after regaining consciousness from a POTS syncopal episode. [Filing No. 11, at ECF p. 13]. At the administrative hearing, Plaintiff testified that it would take him "about four hours" to recover from POTS-associated migraines and that he would "usually put a blanket over [his] head and try to make sure [he's] in a dark and quiet place." [Filing No. 7-2, at ECF p. 50]. Had the ALJ adequately accounted for that testimony, Plaintiff maintains, the ALJ would have included limitations for "light sensitivity" and "likely off-task behavior" in his residual functional capacity. [Filing No. 11, at ECF p. 13.] Plaintiff argues that without those limitations the vocational expert did not have a "complete picture" when opining he could perform past work— making remand necessary. [Filing No. 11, at ECF p. 15.]

Plaintiff mistakenly assumes that the ALJ was required to credit his migraine testimony and fashion appropriate limitations. *But see* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled."). Plaintiff, as a claimant, "bears the burden to prove [he] is disabled by producing medical evidence." *Gedatus*, 994 F.3d at 905. Absent from Plaintiff's brief is any citation to record medical evidence that would support setting "light sensitivity" or "likely off-task behavior" limits. *See Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (emphasizing that "an ALJ need only include limitations that are supported by the medical record"); *Gedatus*, 994 F.3d at 904 ("A fundamental problem is

4

[claimant] offered no opinion from any doctor to set sitting limits, or any other limits, greater than those the ALJ set.").

At bottom, Plaintiff's argument amounts to a disagreement with how the ALJ weighed the evidence in his case. As Plaintiff admits, "the ALJ acknowledged [his] testimony" about the POTS-associated migraines. [Filing No. 11, at ECF p. 13]. When explaining her residual functional capacity determination, the ALJ noted:

> Regarding his postural orthostatic tachycardia syndrome ("POTS"), the claimant stated at first, he passed out up to three times per week, but on average two times per week. . . . He reported the effects from these episodes last about four hours when migraines occur along with these episodes. He reported that his episodes are not related to changing positions and occur randomly, noting he normally has migraines with the POTS, but there are times he has separate migraines as well that are related to PTSD. The claimant stated that the migraines affect his functioning, in that he has to be in a dark and quiet place, and he noted that his driving is affected as well. . . . The claimant stated that his episodes occur two to three times per month now, as he is on new medication.

[Filing No. 72, at ECF p. 25.]

However, the ALJ ultimately found that Plaintiff's statements about the "intensity, persistence, and limiting effects" of his symptoms were "not entirely consistent with the medical evidence and other evidence in the record." [Filing No. 7-2, at ECF p. 26.] In so finding, the ALJ surveyed at some length Plaintiff's reported daily activities as well as his medical treatment history and the opinions of consultative examining and state agency physicians. [Filing No. 7-2, at ECF p. 26–33]. The ALJ then "carefully constructed" a residual functional capacity "that incorporates [Plaintiff's] impairments and his allegations as supported by and tempered by" the medical evidence. [Filing No. 7-2, at ECF p. 33.]

As the Seventh Circuit explained in *Tutwiler v. Kijakazi*, 87 F.4th 853, 859–60 (7th Cir. 2023), the ALJ's "careful consideration [was] shown by the fact that [she] departed from the residual functional capacity recommended by the state agency physicians" who evaluated

5

Plaintiff. While the state agency found no exertional limitations in this case, the ALJ "included a limitation to a range of medium level exertional work, as a precaution due to [Plaintiff's] occasional POTS symptoms/syncopal episodes, and precluded operation of a motor vehicle." [Filing No. 7-2, at ECF p. 33].

Plaintiff may disagree with how the ALJ weighed the evidence, but "[t]he presence of contradictory evidence and arguments does not mean the ALJ's determination is not supported by substantial evidence." *Gedatus*, 994 F.3d at 903; *see also Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021) ("Even if reasonable minds could differ on the weight the ALJ gave to the medical evidence, we will not substitute our judgment for that of the ALJ's by reweighing the evidence."). The Court finds no reversible error in the ALJ's residual functional capacity determination.

  **B. Dr. Hannah's Statements**

Plaintiff next argues that the ALJ reversibly erred by not treating certain statements by treating physician Dr. Hannah as "medical opinion" evidence and evaluating their persuasiveness as required by 20 C.F.R. § 404.1520c. The Court agrees that Dr. Hannah's statements qualify as a medical opinion but concludes that the ALJ had no obligation under the regulations to provide any analysis of the opinion.

The SSA's regulations sort evidence of disability into different categories, and those categories matter "because they dictate how an ALJ should evaluate evidence a claimant submits in support of an application for benefits." *Jones v. Dudek*, 134 F.4th 991, 992 (7th Cir. 2025). As relevant here, the regulations define a medical opinion as a statement from a medical source about (1) what a claimant can still do despite his impairments and (2) whether a claimant has one or more impairment-related limitations or restrictions in certain listed abilities. *See* 20 C.F.R. § 404.1513(a)(2). An ALJ is to "evaluate the persuasiveness" of all medical opinions for

6

"supportability" and "consistency" and articulate in her decision how she considered the supportability and consistency factors. 20 C.F.R. § 404.1520c(a), (b)(2).

However, the regulations also explain that the ALJ will not provide any analysis of statements "on issues reserved to the Commissioner"—even if the statement qualifies as a medical opinion. 20 C.F.R. § 404.1520b(c)(3). A statement is "on issues reserved to the Commissioner" where it "direct[s] [the agency's] determination or decision that you are or are not disabled." 20 C.F.R. § 404.1520b(c). Included are statements "that that you are or are not disabled, . . . able to work, or able to perform regular or continuing work." 20 C.F.R. § 404.1520b(c)(3)(i).

Dr. Hannah's statements appear on three physician narrative forms for Plaintiff's short-term disability insurer. On each of the forms, Dr. Hannah is asked whether she advised her patient to return or remain out of work and to list her patient's current restrictions and limitations. On Plaintiff's form dated November 7, 2022, Dr. Hannah noted "<u>no work</u> until syncope is worked up due to high likelihood of harm to self or others." [Filing No. 7-10, at ECF p. 185 (underline in original).] On the next form dated February 1, 2023, Dr. Hannah noted that "yes," she was continuing to advise that Plaintiff remain out of work and that he "should not drive or operate any machinery due to unexplained syncope of unknown origin." [Filing No. 7-10, at ECF p. 164.] Finally, on the form dated February 14, 2023, Dr. Hannah noted that Plaintiff's current restrictions and limitations were "<u>all</u> including driving because unconsciousness has not [sic] predictability." [Filing No. 7-10, at ECF p. 159 (underline in original).] Dr. Hannah indicated her expectation that Plaintiff would return to work full time in January 2024. [Filing No. 7-10, at ECF p. 159].

The Commissioner argues that Dr. Hannah's "terse responses to one-page insurance forms" do not constitute medical opinion evidence. [Filing No. 13, at ECF p. 13.] This argument places too much emphasis on form over substance. The Seventh Circuit has recently clarified that a physician's statement about what a claimant "can still do" despite his impairments qualifies as a medical opinion. *See Jones*, 134 F.4th at 997 (rejecting Commissioner's argument that "a statement about what a claimant can still do is not a medical opinion unless the physician frames the statement in terms of the claimant's ability to perform some or all of specific work-related demands itemized" in the regulations). Read as a whole, Dr. Hannah's statements suggest what Plaintiff could still do while his syncope was "worked up" was, in fact, nothing.[1] *Cf. id.* (noting physician's "clinical impression that [claimant's] pain and joint strain allow him to work up to 20 hours per week as a grocery store cashier" fits the medical opinion definition). That meets the definition of medical opinion evidence. The Commissioner has not identified any basis in the regulations to categorize Dr. Hannah's statements differently because they are brief or appear on a form for Plaintiff's short-term disability insurer.

The inquiry, however, does not end there. As noted above, an ALJ need not provide any analysis of statements "on issues reserved to the Commissioner." 20 C.F.R. § 404.1520b(c)(3). Dr. Hannah's statements that Plaintiff was unable to work (at least in the short term) were conclusions "on the ultimate question before the ALJ," that is, whether Plaintiff is disabled. *Jones*, 134 F.4th at 997. Consequently, the ALJ was not obligated under the regulations to provide any analysis of Dr. Hannah's statements, *see id.* at 998, though she did acknowledge them in her decision. [Filing No. 7-2, at ECF p. 28].

---

[1] Dr. Hannah specifically opined that Plaintiff should not drive or operate any machinery, and the ALJ included those limitations in Plaintiff's residual functional capacity. [Filing No. 7-2, at ECF p. 24.]

8

Plaintiff does not appear to dispute that Dr. Hannah's statements were on issues reserved to the Commissioner. Rather, Plaintiff argues it was "legal error" for the ALJ to ignore Dr. Hannah's medical opinion simply because it touched on such issues. [Filing No. 14, at ECF p. 3 (citing *Garcia v. Colvin*, 741 F.3d 758 (7th Cir. 2013)).[2]] To be sure, the Seventh Circuit stated in *Garcia* that a treating physician's medical opinion on issues reserved to the Commissioner "can't be ignored." *Garcia*, 741 F.3d at 760 (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2013) ("The pertinent regulation says that 'a statement by a medical source that you are disabled or unable to work does not mean that we will determine that you are disabled.' 20 C.F.R. § 404.1527(e)(1). That's not the same thing as saying that such a statement is improper and therefore to be ignored." (internal quotation marks omitted))).

However, Plaintiff's citation to *Garcia* is unavailing for two reasons. First, the ALJ did not ignore Dr. Hannah's medical opinion but discussed it during her extensive overview of the medical evidence. [Filing No. 7-2, at ECF p. 28–30.] And second, the pertinent regulations have changed since the Seventh Circuit decided *Garcia*. An ALJ is now under no obligation to provide any analysis of statements on issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1520b(c)(3) (effective March 27, 2017). The Seventh Circuit applied that exception to the articulation requirement in *Jones*. *See Jones*, 134 F.4th at 998 (holding that an ALJ "had no obligation under the regulations to provide any analysis" of a treating physician's medical opinion because it "offered a judgment on the ultimate question of whether [the claimant was] disabled"). In sum, the record reflects that the ALJ was aware of Dr. Hannah's opinion.

---

[2] Plaintiff's reply brief offers a lengthy block quotation ostensibly from *Garcia*, but only the first half of the quoted text actually appears in that opinion. The second half comes from a case not cited in Plaintiff's reply—*Feyen v. Colvin*, No. 13–C–1380, 2014 WL 4494524 at *11 (E.D. Wis. Sept. 11, 2014). Plaintiff's counsel shall take more care in her submissions to this Court.

However, because Dr. Hannah's medical opinion was a judgment on whether Plaintiff was disabled, the ALJ did not err by failing to evaluate the opinion for its persuasiveness.

### IV. Conclusion

For these reasons, Plaintiff's request for remand [Filing No. 11] is denied.

Date: 1/5/2026

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email